UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ZANWAT EQUIPMENT, LLC, | * | |
| | * | Case No. 4:22-cv-4171 |
| Plaintiff, | * | |
| | * | **AMENDED COMPLAINT** |
| vs. | * | **AND JURY DEMAND** |
| | * | |
| BOSS FEEDS, LTD, BRETT STEWART, | * | |
| and BURKE NISH, | * | |
| | * | |
| Defendants. | * | |

COMES NOW, Plaintiff, Zanwat Equipment, LLC (hereafter "Zanwat" or "Plaintiff"), by and through its undersigned counsel, and for its Amended Complaint against the above-named Defendants, Boss Feeds, LTD ("Boss Feeds"), Brett Stewart ("Stewart"), and Burke Nish ("Nish") (collectively hereafter "Defendants"), states and alleges as follows:

## PARTIES

1. Zanwat is a limited liability company organized under the laws of South Dakota, with its principal place of business located in Aurora, Brookings County, South Dakota.

2. Boss Feeds is a Canadian company with its principal place of business located in Cardston, Alberta, Canada.

3. Stewart and Nish are the owners of Boss Feeds.

## JURISDICTION AND VENUE

4. The South Dakota Circuit Court for the Third Judicial Circuit had jurisdiction over this action pursuant to SDCL 16-6-9. However, that court was divested jurisdiction upon Boss Feeds removing this action to federal court. *See* 28 U.S.C. § 1446(d). This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

1

5. Further, the parties to this action have expressly stipulated to allow this Court to exercise jurisdiction over this dispute pursuant to the express terms of the agreement between the parties.

6. Venue was proper in Brookings County, South Dakota, pursuant to SDCL 15-5-5, 15-5-6, and 15-5-8. However, that court was divested jurisdiction upon Boss Feeds removing this action to federal court. *See* 28 U.S.C. § 1446(d). Pursuant to 28 U.S.C. § 1391, venue is proper in this Court.

7. Further, the parties to this action have expressly stipulated to the courts of South Dakota as the proper venue for this dispute pursuant to the express terms of the agreement between the parties.

## FACTUAL ALLEGATIONS

8. On or about June 16, 2020, Zanwat and Boss Feeds entered into an Equipment Lease Agreement ("Equipment Agreement"). A true and correct copy of the Equipment Agreement is attached hereto as **Exhibit 1**.

9. The terms of the Equipment Agreement remain through June 16, 2030.

10. Pursuant to the Equipment Agreement, Zanwat agreed to lease equipment to Boss Feeds for the production of livestock lick tubs at Boss Feeds' facility in Canada.

11. Zanwat fully performed its obligations owing to Boss Feeds under the Equipment Agreement. Specifically, among other things, Zanwat leased equipment to Boss Feeds, delivered the equipment to Boss Feeds' manufacturing facility in Canada, configured the equipment using Zanwat's confidential and proprietary methods, and demonstrated the proper operation of the equipment for its intended use.

12. In consideration of Zanwat's performance under the Equipment Agreement, Boss Feeds agreed to make payments to Zanwat consistent with Exhibit B to the Equipment Agreement. Specifically, Boss Feeds agreed, among other things, to make quarterly payments based on the net cash from the operations of Boss Feeds' manufacturing operation.

13. Boss Feeds has failed to fulfill its obligations owing to Zanwat under the Equipment Agreement, including, but expressly not limited to, failing to make required financial disclosures; failing to keep confidential, proprietary information of Zanwat that Zanwat provided to Boss Feeds in conjunction with the Equipment Agreement; and failing to make quarterly lease payment as required under the Equipment Agreement.

14. In consideration of Zanwat's performance under the Equipment Agreement, Boss Feeds agreed not to disclose certain confidential information owned by Zanwat consistent with Exhibit C to the Equipment Agreement ("Non-Disclosure Agreement"). Specifically, Boss Feeds, via certain designated recipients of the confidential information, agreed to receive the confidential information and agreed, among other things, that the confidential information would only be used by the designated recipients while they were employed by, or in contract with, Boss Feeds, to use its best efforts to maintain the confidentiality of the confidential information, not to reverse engineer nor attempt to obtain additional information beyond the scope of the Non-Disclosure Agreement, and not to independently develop concepts, ideas, or designs related to any features or characteristics of the confidential information. True and correct copies of the signed Non-Disclosure Agreements (Exhibit C to the Equipment Agreement) are attached hereto as **Exhibits 2A and 2B**.

15. Boss Feeds has failed to fulfill its obligations owing to Zanwat under the Non-Disclosure Agreement, including, but expressly not limited to, failing to have its designated

recipients only use the confidential information while employed by, or in contract with, Boss Feeds, failing to use its best efforts to maintain the confidentiality of the confidential information, failing to not reverse engineer nor attempt to obtain additional information beyond the scope of the Non-Disclosure Agreement, and failing to not to independently develop concepts, ideas, or designs related to any features or characteristics of the confidential information.

16. Stewart and Nish also agreed not to disclose certain confidential information owned by Zanwat consistent with the Non-Disclosure Agreement. Specifically, Stewart and Nish agreed to receive the confidential information and agreed, among other things, that they would only use their best efforts to maintain the confidentiality of the confidential information, not to reverse engineer nor attempt to obtain additional information beyond the scope of the Non-Disclosure Agreement, and not to independently develop concepts, ideas, or designs related to any features or characteristics of the confidential information.

17. Stewart and Nish have failed to fulfill their obligations owing to Zanwat under the Non-Disclosure Agreement, including, but expressly not limited to, failing to use their best efforts to maintain the confidentiality of the confidential information, failing to not reverse engineer nor attempt to obtain additional information beyond the scope of the Non-Disclosure Agreement, and failing to not independently develop concepts, ideas, or designs related to any features or characteristics of the confidential information.

18. In a letter dated April 22, 2022, Zanwat, through counsel, gave notice to Boss Feeds of Boss Feeds' default under the Equipment Agreement and demanded that Boss Feeds: (1) pay all sums due and owing under the Equipment Agreement; and (2) provide the financial reporting required by the Equipment Agreement ("April 22, 2022 Letter"). A true and correct copy of the April 22, 2022 Letter is attached hereto as **Exhibit 3**.

19. In the April 22, 2022 Letter, Zanwat also gave Boss Feeds notice of Zanwat's intent to exercise its right under Exhibit B to the Equipment Agreement to examine and audit certain books and records of Boss Feeds.

20. Zanwat has performed all conditions precedent to the initiation of this action, or Boss Feed's actions indicate those steps are futile and need not be performed.

### COUNT I: BREACH OF CONTRACT
**(As Against Boss Feeds Regarding the Equipment Agreement)**

21. Zanwat realleges the foregoing paragraphs and hereby incorporates them in full as though fully stated herein.

22. Zanwat and Boss Feeds entered into a valid contract, the Equipment Agreement, for Zanwat to lease equipment to Boss Feeds for the production of lick tubs at Boss Feeds' facility in Canada.

23. Zanwat fully performed its obligations owing under the Equipment Agreement by, among other things, delivering the equipment to Boss Feeds' manufacturing facility in Canada, configuring the equipment using Zanwat's confidential and proprietary methods, and demonstrating the proper operation of the equipment for its intended use.

24. Boss Feeds breached its duty of performance toward Zanwat under the Equipment Agreement by, among other things, failing to make required financial disclosures; failing to keep confidential, proprietary information of Zanwat that Zanwat provided to Boss Feeds in conjunction with the Equipment Agreement; and failing to make quarterly lease payment as required under the Equipment Agreement.

25. Boss Feeds also breached its duty of good faith and fair dealing toward Zanwat.

26. As a result of Boss Feeds' breach of the Equipment Agreement, Zanwat has suffered, and continues to suffer, monetary damages to be specified at trial.

## COUNT II: BREACH OF CONTRACT
**(As Against Boss Feeds Regarding the Non-Disclosure Agreement)**

27.     Zanwat realleges the foregoing paragraphs and hereby incorporates them in full as though fully stated herein.

28.     Zanwat and Boss Feeds entered into a valid contract, the Non-Disclosure Agreement, for Zanwat to provide Boss Feeds with certain confidential information related to the production of lick tubs and Boss Feeds agreed to keep this information confidential.

29.     Zanwat fully performed its obligations owing under the Non-Disclosure Agreement by, among other things, providing Boss Feeds with the confidential information.

30.     Boss Feeds breached its duty of performance toward Zanwat under the Non-Disclosure Agreement by, among other things, failing to have its designated recipients only use the confidential information while employed by, or in contract with, Boss Feeds, failing to use its best efforts to maintain the confidentiality of the confidential information, failing to not reverse engineer nor attempt to obtain additional information beyond the scope of the Non-Disclosure Agreement, and failing to not to independently develop concepts, ideas, or designs related to any features or characteristics of the confidential information.

31.     Boss Feeds also breached its duty of good faith and fair dealing toward Zanwat.

32.     As a result of Boss Feeds' breach of the Non-Disclosure Agreement, Zanwat has suffered, and continues to suffer, monetary damages to be specified at trial.

## COUNT III: UNJUST ENRICHMENT
**(As Against Boss Feeds)**

33.     Zanwat realleges the foregoing paragraphs and hereby incorporates them in full as though fully stated herein.

34. Boss Feeds received a benefit in the form of, among other things, delivering the equipment to Boss Feeds' manufacturing facility in Canada, configuring the equipment using Zanwat's confidential and proprietary methods, and demonstrating the proper operation of the equipment for its intended use.

35. Boss Feeds was cognizant of the benefit received in the form of, among other things, delivering the equipment to Boss Feeds' manufacturing facility in Canada, configuring the equipment using Zanwat's confidential and proprietary methods; and demonstrating the proper operation of the equipment for its intended use.

36. Boss Feeds' retention of the benefit in the form of, among other things, delivering the equipment to Boss Feeds' manufacturing facility in Canada, configuring the equipment using Zanwat's confidential and proprietary methods; and demonstrating the proper operation of the equipment for its intended use unjustly enriches Boss Feeds and should be disgorged.

37. Boss Feeds also received a benefit in the confidential information Zanwat provided Boss Feeds related to the production of lick tubs.

38. Boss Feeds was cognizant of the benefit it received in the form of the confidential information Zanwat provided Boss Feeds related to the production of lick tubs.

39. Boss Feeds retention of the benefit in the form of the confidential information Zanwat provided Boss Feeds related to the production of lick tubs unjustly enriches Boss Feeds and should be disgorged.

40. Boss Feeds should be required to compensate Zanwat for the value of the benefits conferred.

## COUNT IV: QUANTUM MERUIT
**(As Against Boss Feeds)**

41. Zanwat realleges the foregoing paragraphs and hereby incorporates them in full as though fully stated herein.

42. Zanwat provided Boss Feeds a benefit as a result of the equipment and work performed by Zanwat for Boss Feeds' manufacturing facility in Canada.

43. Boss Feeds received and retained the benefit of the equipment furnished and work performed by Zanwat for Boss Feeds' manufacturing facility in Canada.

44. Boss Feeds was cognizant of the benefit it received in the form of the equipment furnished and work performed by Zanwat for Boss Feeds' manufacturing facility in Canada.

45. Boss Feeds requested Zanwat's services in the form of the equipment furnished and work performed by Zanwat for Boss Feeds' manufacturing facility in Canada, and Zanwat reasonably expected to be paid for said services.

46. Boss Feeds has not fully compensated Zanwat for the value of the services Zanwat provided in the form of the equipment furnished and work performed by Zanwat for Boss Feeds' manufacturing facility in Canada.

47. It would be inequitable to allow Boss Feeds to retain the value of the services provided in the form of the equipment furnished and work performed by Zanwat for Boss Feeds' manufacturing facility in Canada without full compensation to Zanwat.

48. Boss Feeds should be required to compensate Zanwat for the value of the services performed by Zanwat in the form of the equipment furnished and work performed by Zanwat for Boss Feeds' manufacturing facility in Canada.

## COUNT V:  PROMISSORY ESTOPPEL
**(As Against Boss Feeds)**

49. Zanwat realleges the foregoing paragraphs and hereby incorporates them in full as though fully stated herein.

50. Boss Feeds promised Zanwat that it would fully compensate Zanwat for delivering the equipment to Boss Feeds' manufacturing facility in Canada, configuring the equipment using Zanwat's confidential and proprietary methods, and demonstrating the proper operation of the equipment for its intended use.

51. Boss Feeds also promised Zanwat that it would make financial disclosures and keep confidential, proprietary information of Zanwat that Zanwat provided to Boss Feeds in conjunction with the Equipment Agreement.

52. Boss Feeds promised that it would keep certain information that Zanwat provided related to the production of lick tubs confidential.

53. Boss Feeds also promised, pursuant to the Non-Disclosure Agreement, that it would only have its designated recipients use the confidential information while employed by, or in contract with, Boss Feeds, that it would use its best efforts to maintain the confidentiality of the confidential information, that it would not reverse engineer nor attempt to obtain additional information beyond the scope of the Non-Disclosure Agreement, and that it would not to independently develop concepts, ideas, or designs related to any features or characteristics of the confidential information.

54. Zanwat reasonably and justifiable relied on Boss Feeds' promise that it would fully compensate Zanwat for delivering the equipment to Boss Feeds' manufacturing facility in Canada, configuring the equipment using Zanwat's confidential and proprietary methods, and demonstrating the proper operation of the equipment for its intended use.

55. Zanwat also reasonably and justifiably relied on Boss Feeds' promises that it would make financial disclosures and keep confidential, proprietary information of Zanwat that Zanwat provided to Boss Feeds in conjunction with the Equipment Agreement.

56. Zanwat reasonably and justifiably relied on Boss Feeds' promise that it would keep certain information that Zanwat provided related to the production of lick tubs confidential.

57. Zanwat also reasonably and justifiably relied on Boss Feeds' promise promised, pursuant to the Non-Disclosure Agreement, that it would only have its designated recipients use the confidential information while employed by, or in contract with, Boss Feeds, that it would use its best efforts to maintain the confidentiality of the confidential information, that it would not reverse engineer nor attempt to obtain additional information beyond the scope of the Non-Disclosure Agreement, and that it would not to independently develop concepts, ideas, or designs related to any features or characteristics of the confidential information.

58. Zanwat altered its position to its detriment in the reasonable belief that Boss Feeds would perform its promise and fully compensate Zanwat for delivering the equipment to Boss Feeds' manufacturing facility in Canada, configuring the equipment using Zanwat's confidential and proprietary methods; and demonstrating the proper operation of the equipment for its intended use.

59. Zanwat also altered its position to its detriment in the reasonable belief that Boss Feeds would perform its promises and make financial disclosures and keep confidential, proprietary information of Zanwat that Zanwat provided to Boss Feeds in conjunction with the Equipment Agreement.

60. Zanwat altered its position to its detriment in the reasonable belief that Boss Feeds would perform its promises and keep certain information that Zanwat provided related to the production of lick tubs confidential.

61. Zanwat also altered its position to its detriment in the reasonable belief that Boss Feeds would perform its promises, pursuant to the Non-Disclosure Agreement, and only have its designated recipients use the confidential information while employed by, or in contract with, Boss Feeds, that it would use its best efforts to maintain the confidentiality of the confidential information, that it would not reverse engineer nor attempt to obtain additional information beyond the scope of the Non-Disclosure Agreement, and that it would not to independently develop concepts, ideas, or designs related to any features characteristics of the confidential information.

62. The detriment suffered by Zanwat in reliance on Boss Feeds' promises is economically substantial.

63. The detriment suffered by Zanwat was foreseeable by Boss Feeds.

### COUNT VI: FRAUD AND DECEIT
**(As Against Boss Feeds)**

64. Zanwat realleges the foregoing paragraphs and hereby incorporates them in full as though fully stated herein.

65. Boss Feeds represented to Zanwat as a statement of fact that it would fully compensate Zanwat for delivering the equipment to Boss Feeds' manufacturing facility in Canada, configuring the equipment using Zanwat's confidential and proprietary methods; and demonstrating the proper operation of the equipment for its intended use.

66. Boss Feeds also represented to Zanwat as a statement of fact that it would make financial disclosures and keep confidential, proprietary information of Zanwat that Zanwat provided to Boss Feeds in conjunction with the Equipment Agreement.

67. Boss Feeds represented to Zanwat as a statement of fact that it would keep certain information that Zanwat provided related to the production of lick tubs confidential.

68. Boss Feeds also represented to Zanwat as a statement of fact that it would only have its designated recipients use the confidential information while employed by, or in contract with, Boss Feeds, that it would use its best efforts to maintain the confidentiality of the confidential information, that it would not reverse engineer nor attempt to obtain additional information beyond the scope of the Non-Disclosure Agreement, and that it would not to independently develop concepts, ideas, or designs related to any features or characteristics of the confidential information.

69. These representations made by Boss Feeds to Zanwat were untrue and intentionally and recklessly made.

70. These representations by Boss Feeds to Zanwat were made with the intent to deceive Zanwat for the purpose of inducing Zanwat to act upon these representations.

71. In reasonable and justifiable reliance on these representations made by Boss Feeds to Zanwat, Zanwat delivered the equipment to Boss Feeds' manufacturing facility in Canada, configured the equipment using Zanwat's confidential and proprietary methods, and demonstrated the proper operation of the equipment for its intended use.

72. In reasonable and justifiable reliance on these representations made by Boss Feeds to Zanwat, Zanwat provided Boss Feeds with confidential information related to the production of lick tubs.

73. Zanwat's reliance on these representations by Boss Feeds to Zanwat resulted in injury and damage to Zanwat.

74. Boss Feeds' fraudulent and deceitful conduct was oppressive, malicious, intentional, willful, and wanton, entitling Zanwat to receive punitive damages in an amount to be determined at trial.

## COUNT VII: CONVERSION
### (As Against Boss Feeds)

75. Zanwat realleges the foregoing paragraphs and hereby incorporates them in full as though fully stated herein.

76. Zanwat owned, continues to own, and has a possessory interest in the equipment it delivered to Boss Feeds' manufacturing facility in Canada.

77. Zanwat's interest in the equipment it delivered to Boss Feeds' manufacturing facility in Canada is greater than Boss Feeds' interest in this equipment.

78. Boss Feeds has exercised dominion and control over and seriously interfered with Zanwat's interest in the equipment it delivered to Boss Feeds' manufacturing facility in Canada.

79. This conduct by Boss Feeds has deprived Zanwat of its interest in the equipment it delivered to Boss Feeds' manufacturing facility in Canada.

80. Boss Feeds' unauthorized exercise of control and dominion over the equipment Zanwat delivered to Boss Feeds' manufacturing facility in Canada repudiates Zanwat's right in the equipment and is inconsistent with such right.

81. Boss Feeds' conduct in converting the equipment Zanwat delivered to Boss Feeds' manufacturing facility in Canada was oppressive, malicious, intentional, willful, and wanton, entitling Zanwat to receive punitive damages in an amount to be determined at trial.

## COUNT VIII: ACCOUNTING AND AUDIT
**(As Against Boss Feeds)**

82. Zanwat realleges the foregoing paragraphs and hereby incorporates them in full as though fully stated herein.

83. Under Exhibit B to the Equipment Agreement, Boss Feeds was required to provide to Zanwat, within 30 days following the end of each calendar quarter during the term of the Equipment Agreement, a complete and accurate lease payment report calculating net cash from operations during the most recently ended calendar quarter.

84. Boss Feeds has failed to make these financial disclosures as required under Exhibit B to the Equipment Agreement.

85. Under Exhibit B to the Equipment Agreement, Boss Feeds was required to create and maintain complete and accurate books and records that are sufficient to determine the amounts payable to Zanwat under the Equipment Agreement in a form complying with GAAP ("Books and Records") and IFRS Standards as generally accepted accounting standards in Canada; and ensure that sufficient electronic or other appropriate backup systems.

86. Under Exhibit B to the Equipment Agreement, upon no less than 30 days prior written notice, Zanwat has the right to examine and audit, through a recognized registered public accounting firm designated by Zanwat (the "Auditor"), all Books and Records of Boss Feeds.

87. In the April 22, 2022 Letter, Zanwat gave Boss Feeds notice of Zanwat's intent to exercise its right under Exhibit B to the Equipment Agreement to examine and audit all Books and Records of Boss Feeds.

88. Under Exhibit B to the Equipment Agreement, Boss Feeds was required to make all Books and Records available to the Auditor to examine at the normal location where Boss Feeds

maintains the Books and Records and provide copies thereof to be retained by the Auditor in the Books and Records in electronic native format to be retained by the Auditor in its records.

89. Boss Feeds has failed: (1) to make any Books and Records available to the Auditor to examine at the normal location where Boss Feeds maintains the Books and Records as required under Exhibit B to the Equipment Agreement; and (2) to provide copies thereof to be retained by the Auditor in the Books and Records in electronic native format to be retained by the Auditor in its records as required under Exhibit B to the Equipment Agreement.

### COUNT IX: MISAPPROPRIATION OF TRADE SECRET PURSUANT TO SDCL 37-29, *et seq.*
**(As Against Boss Feeds)**

90. Zanwat realleges the foregoing paragraphs and hereby incorporates them in full as though fully stated herein.

91. Zanwat's confidential information obtained by Boss Feeds, including, but expressly not limited to, plant and manufacturing equipment configurations, know-how, and plant manufacturing plant designs for the production of lick tubs, includes trade secrets and/or other proprietary information that derives independent economic value from not being known to, and not being readily available through proper means by, another person who can obtain economic value from the disclosure or use of the information.

92. Zanwat's confidential and trade secret information has been and continues to be the subject of Zanwat's reasonable measures to keep such information secret.

93. Boss Feeds misappropriated such confidential information and trade secret information of Zanwat in connection with its production of lick tubs in Canada.

94. As a result of Boss Feeds' misappropriation, Zanwat has been, and continues to be, damaged in an amount to be determined at trial.

95. Boss Feeds' misappropriation is willful and malicious thereby entitling Zanwat to an award of exemplary damages and attorneys' fees pursuant to SDCL 37-29-3 and 37-29-4.

## COUNT X: BREACH OF CONTRACT
### (As Against Stewart and Nish Regarding the Non-Disclosure Agreement)

96. Zanwat realleges the foregoing paragraphs and herby incorporates them in full as though fully stated herein.

97. Zanwat and Stewart and Nish entered into a valid contract, the Non-Disclosure Agreement, for Zanwat to provide them with certain confidential information related to the production of lick tubs and Stewart and Nish agreed to keep this information confidential.

98. Zanwat fully performed its obligations owing under the Non-Disclosure Agreement by, among other things, providing Stewart and Nish with the confidential information.

99. Stewart and Nish breached their duty of performance toward Zanwat under the Non-Disclosure Agreement by, among other things, failing to use their best efforts to maintain the confidentiality of the confidential information, failing to not reverse engineer nor attempt to obtain additional information beyond the scope of the Non-Disclosure Agreement, and failing to not independently develop concepts, ideas, or designs related to any features or characteristics of the confidential information.

100. Stewart and Nish also breached their duty of good faith and fair dealing toward Zanwat.

101. As a result of Stewart's and Nish's breach of the Non-Disclosure Agreement, Zanwat has suffered, and continues to suffer, monetary damages to be specified at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court for judgment against Boss Feeds, Stewart, and Nish, jointly and severally, as follows:

1. Plaintiff be awarded a judgment against Boss Feeds, Stewart, and Nish, to the extent supported by the claims plead, for compensatory damages, exemplary damages, and punitive damages in an amount to be determined at trial;

2. Boss Feeds be required to provide to Zanwat a complete and accurate lease payment report calculating net cash from operations for each ended calendar quarter as required by Exhibit B to the Equipment Agreement;

3. Boss Feeds be required to make all Books and Records available to the Auditor to examine at the normal location where Boss Feeds maintains the Books and Records, and provide copies thereof to be retained by the Auditor in the Books and Records in electronic native format to be retained by the Auditor in its records as required by Exhibit B to the Equipment Agreement;

4. Plaintiff be awarded prejudgment and post-judgment interest as allowed by law and the Equipment Agreement on all items of damages awarded by the jury at the maximum rate of interest;

5. Plaintiff be awarded its costs, disbursements, and attorneys' fees incurred in this proceeding;

6. Boss Feeds be required to specifically perform its obligations under the Equipment Agreement, or, in the alternative;

7. Plaintiff be awarded permanent injunctive relief as determined by the Court; and

8. Plaintiff be awarded such other relief as this Court deems just and equitable.

Dated this 29th day of January, 2024.

    */s/ Paul W. Tschetter*
Paul W. Tschetter
David J. Hieb
Zachary T. Schmidt
BOYCE LAW FIRM, L.L.P.
300 S. Main Avenue
P.O. Box 5015
Sioux Falls, SD 57117-5015
(605) 336-2424
pwtschetter@boycelaw.com
djhieb@boycelaw.com
ztschmidt@boycelaw.com
*Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims, issues, and defenses so triable.

Dated this 29th day of January, 2024.

    */s/ Paul W. Tschetter*
Paul W. Tschetter
David J. Hieb
Zachary T. Schmidt
BOYCE LAW FIRM, L.L.P.
300 S. Main Avenue
P.O. Box 5015
Sioux Falls, SD 57117-5015
(605) 336-2424
pwtschetter@boycelaw.com
djhieb@boycelaw.com
ztschmidt@boycelaw.com
*Attorneys for Plaintiff*